# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

ANTHONY BUITRON,        )
      Plaintiff,         )
                       )
      v.              )       CAUSE NO.: 2:14-CV-445-PRC
                       )
CAROLYN W. COLVIN,      )
Acting Commissioner of the    )
Social Security Administration,   )
      Defendant.        )

## OPINION AND ORDER

This matter is before the Court on an Amended Complaint [DE 3], filed by Plaintiff Anthony Buitron on December 15, 2014, and a Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 20], filed on June 19, 2015. Plaintiff requests that the November 21, 2013 decision of the Administrative Law Judge denying his claim for supplemental security income be reversed and remanded for further proceedings. On October 16, 2015, the Commissioner filed a response, and Plaintiff filed a reply on November 20, 2015. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

Plaintiff, through his mother, as he was a minor at the time, filed an application for supplemental security income on November 10, 2011, alleging an onset date of August 1, 2001. His claim was denied initially and upon reconsideration. Plaintiff timely requested a hearing, which was held on April 15, 2011. On April 29, 2011, Administrative Law Judge ("ALJ") Curt Marceille issued a written decision denying benefits. Plaintiff filed suit in this Court, and on December 20, 2012, the Court remanded the case to the Commissioner. A second hearing was held on September 11, 2013, which was attended by Plaintiff, his mother, an impartial vocational expert, and Plaintiff's attorney.

ALJ Henry Kramzyk issued an unfavorable decision on November 21, 2013. The ALJ assessed Plaintiff's function as a child under the age of 18 from September 22, 2009, until his birthday in 2013, and assessed Plaintiff under the adult disability standard from the date of his birthday in 2013 through the date of the decision. The ALJ made the following findings:

1. The claimant was born [in 1995] and was therefore in the "Adolescents (age 12 to attainment of age 18)" age group on September 22, 2009, the date the application was filed (e.g., 20 CFR 416.926a(g)(2)(v)). The claimant attained age 18 [in 2013 but before the decision was issued].

2. The claimant has not engaged in substantial gainful activity since the date the application was filed.

3. Before attaining age 18, the claimant had the following severe impairments: attention deficit and hyperactivity disorder (ADHD), oppositional defiant disorder (ODD), and a bipolar disorder.

4. Before attaining age 18, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, Part A or B.

5. Before attaining age 18, the claimant did not have an impairment or combination of impairments that functionally equaled the listings.

    Before attaining age 18, the claimant had less than marked limitation in acquiring and using information.

    Before attaining age 18, the claimant had less than marked limitation in attending and completing tasks.

    Before attaining age 18, the claimant had marked limitation in interacting and relating with others.

    Before attaining age 18, the claimant had no limitation in moving about and manipulating objects.

    Before attaining age 18, the claimant had less than marked limitation in the ability to care for himself.

    Before attaining age 18, the claimant had no limitation in health and physical well-being.

6.  Because the claimant did not have an impairment or combination of impairments that met, medically equaled any listing or functionally equaled the listings, the claimant was not disabled prior to attaining age 18.

7.  The claimant has not developed any new impairment or impairments since attaining age 18.

8.  Since attaining age 18, the claimant has continued to have a severe impairment or combination of impairments.

9.  Since attaining age 18, the claimant has not had an impairment or combination of impairments that meets or medically equals a listed impairment.

10. After careful consideration of the entire record, the undersigned finds that, since attaining age 18, the claimant has had the residual functional capacity to perform work at all exertional levels. He is able to understand, remember, and carry out short, simple, and repetitive instructions and sustain attention and concentration for 2 hour periods of time for 8 hours in a workday and use judgment in making work decisions as it relates to said instructions. He requires an occupation with only occasional co-worker contact and supervision; set routine and procedures and few changes during the workday; no contact with the public; no fast paced production work; and can maintain regular attendance and be punctual within customary tolerances and perform activities within a schedule.

11. The claimant has no past relevant work.

12. The claimant is currently a "younger individual age 18-44".

13. The claimant has at least a high school education and is able to communicate in English.

14. Transferability of job skills is not an issue because the claimant does not have past relevant work.

15. Since attaining age 18, considering the claimant's age, education, work experience, and residual functional capacity, jobs have existed in significant numbers in the national economy that the claimant has been able to perform.

16. The claimant has not been under a disability, as defined in the Social Security Act, since [his birthday in] 2013, the day the claimant attained age 18, through the date of this decision.

(AR 376-388).

The Appeals Council denied Plaintiff's request for review on October 10, 2014, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning

of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## ANALYSIS

In seeking reversal of the ALJ's decision, Plaintiff first argues that the ALJ erred in finding him not disabled as a child by improperly evaluating the medical opinions of record and improperly

analyzing Plaintiff's claim under the domain of "caring for yourself." Plaintiff next argues that, in finding Plaintiff not disabled as an adult, the ALJ made errors in formulating Plaintiff's RFC after he attained age 18. Finally, Plaintiff contends that the credibility determinations for both child and adult disability benefits are flawed. The Commissioner did not respond to several arguments. The Court considers each of Plaintiff's arguments in turn.

## A. Child Disability Benefits

*1.      Child Disability Standard*

For an individual under the age of 18 years, the Social Security Act and regulations apply a sequential three-step inquiry to determine whether the claimant is disabled and entitled to benefits. The steps are: (1) Is the child engaged in substantial gainful activity? If yes, the child is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the child have a severe impairment, that is, one that causes more than minimal functional limitations? If no, the child is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Does the impairment meet, equal, or functionally equal an impairment listed in the social security regulations? If no, the child is not disabled, and the claim is denied; if yes, the child is considered disabled. 20 C.F.R. § 416.924.

At step three, if the child does not meet or equal a Listing, eligibility for benefits may nevertheless be found based on "functional equivalence." 20 C.F.R. § 416.926a ("Functional equivalence for children"). To determine functional equivalence, the ALJ rates the child's degree of limitation as either "no limitation," "less than marked," "marked," or "extreme" in the following six "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for

oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). A finding of "marked" limitation in two domains or an "extreme" limitation in one domain results in a finding of disability. 20 C.F.R. § 416.926a(a), (d). A "marked" limitation is found when the child's "impairment(s) interferes seriously with [his] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation also means a limitation that is "more than moderate" but "less than extreme." *Id.*

In making the findings, the ALJ considers the child's functioning in his activities, which includes everything he does at home, at school, and in the community. 20 C.F.R. § 416.926a(b)(1). For functional equivalence, the child's functioning is not compared to the requirements of any specific Listing. 20 C.F.R. § 416.926(a)(d).

2.     *Relevant Factual Background*

The following chart sets out the three medical opinions that rated Plaintiff in the six domains as well as the ALJ's own findings. First, Dr. Roush and Dr. Hill gave a joint opinion on "Functional Equivalence" within the "Childhood Disability Evaluation Form." A month later, Dr. Gaddy and Dr. Horton issued a joint opinion on the same form, replacing the opinion of Dr. Roush and Dr Hill. Like the ALJ, these consultative reviewers rated Plaintiff in the six domains on a scale of "no limitation," "less than marked," "marked," and "extreme." Plaintiff's ninth grade English teacher completed a "Teacher Questionnaire" that required consideration of the same six domains but asked for a rating in several subcategories within each domain on a scale of "1 - no problem," "2 - a slight problem," "3 - obvious problem," "4 - a serious problem," and "5 - a very serious problem."

|  | Steven E. Roush, M.D. & Stacia Hill, Ph.D. | 9th grade English teacher | Joseph N. Gaddy, M.D. & Randal Horton, Psy.D. | Dr. Biscardi | ALJ's decision |
|---|---|---|---|---|---|
|  | 11/25/2009 & 12/18/2009 | 12/11/2009 | 1/18/2010 & 2/1/2010 | 6/24/2010 | 11/21/2013 |
| Acquiring and using information | no limitation | 1, 2 | no limitation | less than marked | less than marked |
| Attending and completing tasks | less than marked | 1, 2, 3, 4 | less than marked | **marked** | less than marked |
| Interacting and relating with others | less than marked | 1, 2, 3 | **marked** | less than marked | **marked** |
| Moving about and manipulating objects | no limitation | no problems | no limitation | (blank) | no limitation |
| Caring for yourself | no limitation | 1, 2, 3 | less than marked | **marked** | less than marked |
| Health and physical well-being | no limitation | better on meds | no limitation | (blank) | no limitation |
|  | (AR 277-78) | (AR 153-60) | (AR 292-93) | (AR 316-17) |  |
|  |  |  | "controlling weight" | "no weight" |  |

Plaintiff's teacher provided comments immediately following each domain rating in her December 11, 2009 assessment. In assigning ratings of "1 - no problem" and "2- a slight problem" in "acquiring and using information," the teacher wrote that Plaintiff is able to complete his work with minimal support and guidance in English. (AR 154). In giving ratings of "1 - no problem" through "4 - a serious problem" in "attending and completing tasks," the teacher wrote that Plaintiff needs almost continuous redirection in class to stay focused and on task. (AR 155). In assigning

ratings of mostly "1- no problem" and "2 - a slight problem" with two ratings of "3 - an obvious problem" in "interacting and relating with others, the teacher indicated that it was necessary to implement behavior modification strategies and wrote that, "on occasion, [Plaintiff] 'takes a lap.' He walks around the loop of our area to burn off steam and settle down." (AR 156). In the category of "caring for yourself," the teacher assigned ratings of "1 - no problem," "2 - a slight problem," and "3 - an obvious problem" and explained that Plaintiff "has poor impulse control and often acts on his emotions without thinking about consequences." (AR 158). Under "medical conditions," the teacher wrote that Plaintiff performs much better on the days he takes his medication.

The joint form completed by Dr. Gaddy and Dr. Horton allows the doctors to provide a narrative explanation of the supporting evidence following the rating in each domain. In finding "no limitation" in "acquiring and using information," Dr. Gaddy and Dr. Horton noted that Plaintiff was a regular education student, that on December 17, 2009, he was noted as having average intelligence at Porter Starke, and that he was noted that same date as doing well in school and getting 4 grades of "B." (AR 292). In finding "less than marked" limitation in "attending and completing tasks," the doctors wrote that at the initial level, the teacher reported some issues in this domain but less than marked, that Plaintiff was diagnosed and treated with medication for attention deficit hyperactivity disorder, that the November 30, 2009 notes from his mother reported good concentration and bringing homework home and completing work in class or at home. The doctors also noted that one medicine was discontinued. *Id*. In finding "marked" limitations in "interacting and relating with others," the doctors noted that Plaintiff has occasional issues in this domain and has friends and that the behavior log from school indicates problems in unstructured areas. *Id*. In finding "no limitation" in "moving about and manipulating objects," the doctors noted only an issue with Plaintiff's vision

that was not severe. (AR 293). In finding "less than marked limitation" in "caring for yourself," the doctors noted that Plaintiff had irritability and sleep issues, had no suicidal or homicidal ideation, and was on medication at night. *Id*. Finally, the doctors made no notation in finding "no limitation" in "health and physical well-being." *Id*.

David Biscardi, Ph.D., a nonexamining consultant, completed a "Medical Interrogatory - Child" at the request of the first ALJ. Dr. Biscardi wrote a narrative summary at the conclusion of the form to explain the evidentiary support for his findings. (AR 319). Therein, he recounted the November 12, 2009 consultative psychological examination that diagnosed ADHD and ODD, noting the GAF of 65 while on medication and 53 without. He also noted the normal findings of the physical examination, including Plaintiff's report that he gets along well with peers but "can backtalk teachers." (AR 319). Dr. Biscardi noted that Plaintiff reported that he is independent in self care, makes simple meals, uses the computer after school, enjoys basketball and the computer, and does household tasks with reminders. Dr. Biscardi also noted that the examiner opined that medication was effective. Dr. Biscardi then noted the December 2009 comment from treating source Dr. Abigail Malone at Porter Starke that Plaintiff was doing well in school, had trouble at home, gets irritable with friends easily, reported sleep disturbance, and "blows up" in the afternoon with anything stressful and that a medication was added. *Id*.; *see also* (AR 272) (Dr. Malone's record). Dr. Biscardi further discussed an updated note by Dr. Malone from March 26, 2010 that showed Plaintiff with a GAF of 60 for ADHD, hyperactive and impulsive type, and ODD, with disturbance of conduct. (AR 319).

Dr. Biscardi then described the teacher report of December 2009 as showing Plaintiff functioning academically at grade level with multiple suspensions and as having slight limitations

in "acquiring and using information," slight to serious limitations in "attending and completing tasks" daily because he needed almost continuous redirection in class to stay focused and on task, slight to obvious weekly to daily limitations in "interacting and relating to others," and slight to obvious weekly/daily limitations in "caring for self." Dr. Biscardi cited the teacher's notation that Plaintiff had poor impulse control and often acted on emotions without regard for consequences and that Plaintiff performed much better when taking medication.

Dr. Biscardi concluded that Listing 112.11 for ADHD and 112.08 for ODD were met by the medical evidence of record. He found that the "marked" limitations in "attending and completing tasks" and in "caring for self" were both reported by the teacher and "suggested" in the medical evidence of record." (AR 319). Dr. Biscardi gave "great weight" to the teacher's assessment of functional capacities. *Id*.

Assessing all of the opinions, the ALJ gave "controlling weight" to the joint opinion of Dr. Gaddy and Dr. Horton and gave no weight to the opinion of Dr. Biscardi. Because the ALJ found that Plaintiff did not have at least two marked limitations or one extreme limitation, a finding of not disabled resulted.

*3.    Analysis*

Plaintiff contends that the ALJ erred in finding that he was not disabled as a child, arguing that the ALJ did not properly evaluate the medical opinions of record and that the ALJ inadequately analyzed Plaintiff's functioning under the domain of "caring for yourself."

1.    Weighing medical opinion evidence

Plaintiff first argues that the ALJ made several errors in weighing the opinion evidence when he gave "controlling weight" to the opinion of Dr. Gaddy and Dr. Horton and no weight to the

opinion of Dr. Biscardi. In determining whether a claimant is disabled, the ALJ "will always consider the medical opinions in [the] case record together with the rest of the relevant evidence . . . received." 20 C.F.R. § 416.927(b). And, the ALJ evaluates every medical opinion received. 20 C.F.R. § 416.927(c). This includes the opinions of nonexamining sources such as state agency medical and psychological consultants as well as outside medical experts consulted by the ALJ. *Id.* § 416.927(e)(2). In her response brief, the Commissioner does not directly address, much less refute, any of Plaintiff's arguments regarding the weight given to the medical opinions.[1]

a.    "Controlling Weight"

Plaintiff argues that the ALJ erred by giving "controlling weight" to the opinion of Dr. Gaddy and Dr. Horton, who were nonexamining, state agency reviewing doctors, in violation of Social Security Ruling 96-2p. Indeed, the Ruling provides: "Although opinions from other acceptable medical sources may be entitled to great weight, and may even be entitled to more weight than a treating source's opinion in appropriate circumstances, opinions from sources other than treating sources can never be entitled to 'controlling weight.'" Social Security Ruling 96-2p, 1996 WL 374188, at *2 (July 2, 1996). The Commissioner does not respond to this argument. In this instance, the error is harmless because there is no treating source opinion to which the ALJ could have given greater weight. However, because remand is ordered on other grounds, the ALJ will have an opportunity to properly name the weight given to this opinion.

---

[1] Although heading II of the Commissioner's response brief purports to address the "Weight He Gave to the Medical Source Opinions," the section does not contain any discussion of the medical source opinions.

b.      Weight given to the joint opinion of Dr. Gaddy and Dr. Horton

Plaintiff next argues that the ALJ erred in giving the most weight to the joint opinion of Dr. Gaddy and Dr. Horton. In assessing the opinion, the ALJ first noted that the opinion superseded that of Dr. Roush and Dr. Hill "[apparently] based upon subsequent evidence which showed the claimant to be more limited than initially thought." (AR 384). The ALJ then explained, "The evidence—including school records and psychological records—supports the limitations found upon reconsideration; therefore, they are afforded controlling weight." *Id*. No further analysis or explanation was given.

Unless a treating source opinion is giving "controlling weight," which is not at issue in this case, the ALJ considers several factors for weighing all opinion evidence, including the opinions of state agency physicians and psychiatrists as well as medical experts sought by the ALJ and "must explain in the decision the weight given" to each. 20 C.F.R. § 416.927(e)(2)(ii), (iii). First, more weight is given to a source that has examined the claimant than one who has not. 20 C.F.R. § 416.927(c)(1). Second, treating sources are given more weight than other sources, and a number of subfactors are considered. 20 C.F.R. § 416.927(c)(2). Third, the ALJ considers supportability, which gives more weight to opinions that present relevant evidence, particularly medical signs and laboratory findings, in support of the opinion. 20 C.F.R. § 416.927(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion. . . . We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources."). Fourth, "the more consistent an opinion is with the record as a whole, the more weight [is given] to that opinion." 20 C.F.R. § 416.927(c)(4). Fifth, more weight is given to a specialist about medical issues related to the area of speciality than to the

opinion of a source who is not a specialist. 20 C.F.R. § 416.927(c)(5). Finally, other factors are considered as brought to the attention of the ALJ or of which the ALJ is aware, such as the doctor's understanding of the disability programs and their evidentiary requirements as well as familiarity with information in the claimant's case record. 20 C.F.R. § 416.927(c)(6).

More specifically, in considering the findings of state agency consulting doctors, such as Dr. Gaddy and Dr. Horton, the ALJ "will evaluate" the findings using the factors set out above, such "as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions." 20 C.F.R. § 416.927(e)(2)(i).

Plaintiff argues that in giving the most weight to the opinion of Dr. Gaddy and Dr. Horton, the ALJ failed to cite specific evidence in support of the opinion, arguing that the one-sentence general statement that the school records and psychological records support the limitations in the opinion does not constitute an explanation as required by 20 C.F.R. § 416.927(e)(2)(i). The Commissioner does not respond to this argument. Although the Commissioner notes broadly that state agency psychologists are "highly qualified psychologists . . . Who are also experts in Social Security disability evaluations," (Def. Resp. 8 (citing 20 C.F.R. § 416.927(e)(2)(i))), the Commissioner does not argue that the ALJ properly weighed those opinions or refute Plaintiff's arguments.

In support, Plaintiff cites *McKinzey v. Astrue*, 641 F.3d 884 (7th Cir. 2011), and *Roddy v. Astrue*, 705 F.3d 631 (7th Cir. 2013). The ruling in *McKinzey* is distinguishable because in that case, the ALJ did not even mention the state agency opinions, whereas the ALJ in this case evaluated the opinion, weighed it, and gave a reason, albeit short, for that weight. *See McKinzey*, 641 F.3d at 891;

20 C.F.R. § 416.927(e)(2); SSR 96-6p. The cited ruling in *Roddy* is inapposite because it did not deal with the analysis of medical opinions but rather with a finding of inconsistent claimant statements in the context of a credibility determination—statements that the court of appeals did not deem inconsistent. *Roddy*, 705 F.3d at 639.

The brevity of the ALJ's explanation does not itself require remand. The ALJ weighed all of the opinion evidence at the end of his decision on child benefits, following a detailed examination of the medical records at the outset of his decision followed by his findings in each domain that were supported by descriptions of and citations to the evidence of record, including the school records and psychological reports he later references. For example, in his initial recitation of the evidence, the ALJ noted Plaintiff's improved performance at school with medication, dramatically improved functioning at the second evaluation, the GAF score of 60 in March 2010 with continued improvement but labile and reactive behaviors, medication adjustments, choosing not to fight at school despite provocation, continued violence at home reported by his mother but denied by Plaintiff, crisis treatment's finding that Plaintiff was not a danger, the notation of the treating psychiatrist in April 2010 that Plaintiff continued to improve with medication adjustments, generally normal mental status examinations, notations in March 2011 that Plaintiff refused to take his medications, Plaintiff's report of good focus at school, Plaintiff's report of disrespecting teachers with 90% of the incidents involving one teacher, Plaintiff's failure to be compliant with medication, and the failure of Plaintiff and his family to engage in family therapy despite conflicts within the family. (AR 377-79). The ALJ's explanation is further supported by the citation to the school and psychological records by Dr. Gaddy and Dr. Horton in their written discussion of the evidence following the rating in each domain.

15

However, as discussed in the following section regarding the weight given to the opinion of Dr. Biscardi, the ALJ's failure to discuss negative findings throughout the record that are favorable to Plaintiff's application for benefits requires remand.

      c.      Weight given to the opinion of Dr. Biscardi

Dr. Biscardi, whose opinion was solicited by the first ALJ, found that Plaintiff met two Listings as a child and found that he had "marked" limitations in the domains of "attending and completing tasks" and "caring for yourself." In contrast with the brevity of the explanation given to the opinion of Dr. Gaddy and Dr. Horton, the ALJ analyzed Dr. Biscardi's opinion over most of a page.

The ALJ first found Dr. Biscardi's opinion inconsistent with the opinions of Plaintiff's treating mental health professionals. The ALJ noted that Dr. Biscardi recognized the treating examination from November 2009 that gave a GAF of 65 on medication, and 53 when not on medication, and the favorable mental status examination that found Plaintiff to be attentive, cooperative, diligent, and presenting with good attention and concentration. The ALJ added that the November 2009 report found that medication was effective in controlling Plaintiff's symptoms. The ALJ noted that Dr. Biscardi also recognized the findings of the treating clinicians at Porter Starke for the period of December 2009 and March 2010, which showed Plaintiff doing well in school with a GAF of 60. The ALJ then remarked that the two GAFs provided by a treating clinician and an examining psychologist ranged from 60-65, indicating that Plaintiff was experiencing mild symptoms. (AR 385). On this basis, the ALJ found Dr. Biscardi's opinion inconsistent with the treating evidence of record.

Next, the ALJ found that Dr. Biscardi improperly ignored the assessments of the treating clinician and examining psychologist in favor of the opinion of Plaintiff's ninth grade English teacher. The ALJ noted that the teacher had known Plaintiff for five months and taught him one subject. The ALJ also commented that the teacher's assessment was given after Plaintiff had only been receiving treatment for one month (since November 2009). The ALJ found that neither the teacher's assessment nor Dr. Biscardi's opinion considered the improvement in Plaintiff's symptoms when taking his medication as prescribed. The ALJ criticized Dr. Biscardi's reliance on the teacher because the teacher's ratings did not correlate with "marked" findings in any domain. (AR 385). Thus, the ALJ found that Dr. Biscardi improperly relied on the teacher's assessment, noting that it is the ALJ's responsibility to weigh the opinion evidence.

Regarding the ALJ's finding that the teacher did not rate Plaintiff with any "marked" limitations, the Court notes that the teacher rated Plaintiff as having "4 - a serious problem" in two of thirteen categories in "attending and completing tasks." In his analysis of this domain, the ALJ commented that the two categories with that score were "working without distracting self or others" and "changing from one activity to another without being disruptive." (AR 381). The ALJ then noted that the teacher otherwise gave ratings of "1 - no problem" or a "2 - a slight problem" in eight of the thirteen categories, and an "3 - an obvious problem" in three categories. Considering several other facts, the ALJ concluded that Plaintiff was "less than markedly limited" in that domain. Plaintiff does not dispute the ALJ's rating in this domain, arguing only, as addressed below, that the ALJ improperly evaluated the domain of "care for oneself." In the category of "care for oneself," the teacher gave ratings through "3 - an obvious problem."

Finally, the ALJ noted that Dr. Biscardi did not have the benefit of reviewing records from April 2010 that indicated Plaintiff was doing well at school and that his behaviors had significantly improved with medication management and adjustments. (AR 385 (citing (AR 302-07) (AR 328-33))).

Plaintiff criticizes the ALJ for giving no weight to the opinion of Dr. Biscardi, making several detailed arguments. Rather than respond to any of the arguments, the Commissioner summarizes, over an entire page, the ALJ's weighing of Dr. Biscardi's opinion and concludes that the ALJ "provided an adequate explanation for giving less weight to Dr. Biscardi's opinion." (Def. Br.10). However, the Commissioner's summary provides no legal analysis or responsive argument. The Court finds that, despite the detail in the ALJ's discussion, the weight given to Dr. Biscardi's opinion is not supported by substantial evidence because the ALJ cited only evidence of improvement without addressing evidence that supports Plaintiff's claim of disability.

As an initial matter, Plaintiff contends that Dr. Biscardi's opinion is substantially similar to the opinion of Dr. Gaddy and Dr. Horton with the exception of the rating in the domain for "caring for self," with Dr. Biscardi finding "marked" limitation and Dr. Gaddy and Dr. Horton finding "less than marked" limitation. Plaintiff is incorrect. Dr. Biscardi also found "marked" limitation in "attending and completing tasks" whereas Dr. Gaddy and Dr. Horton found "less than marked" limitation, and, Dr. Biscardi found "less than marked" limitation in "interacting and relating with others" whereas Drs. Gaddy and Horton found "marked" limitation in this category. However, Plaintiff makes no argument as to the categories of "attending and completing tasks" and "interacting and relating with others" and, thus, any objection is waived. The Court addresses the argument regarding "caring for self" below.

Plaintiff next disputes the ALJ's finding that Dr. Biscardi's opinion was "inconsistent with the other mental health professionals who have treated and/or examined" Plaintiff. Plaintiff argues that, in noting that Plaintiff was cooperative and displayed good attention and concentration during the 2009 consultative examination with Dr. Nordstrom, (AR 238-40), the ALJ selectively discussed only the evidence showing improvement in symptoms or performance in school and should have discussed other findings from Dr. Malone's treatment records at Porter Starke. On this point, Plaintiff misstates the ALJ's discussion. The ALJ is not providing his own summary of Dr. Nordstrom or Dr. Malone's records; rather, the ALJ is summarizing *Dr. Biscardi*'s recitation of the evidence.

However, Plaintiff is correct in that the ALJ looks only at positive statements that tend to show Plaintiff is not disabled, both in his own recitation of the evidence throughout his decision and in summarizing Dr. Biscardi's opinion. For example, Dr. Biscardi's narrative lists negative findings from Dr. Malone's records in December 2009, namely that Plaintiff "had some trouble at home, gets irritable with friends easily, reports sleep disturbance, [and] blows up in afternoons with anything stressful." (AR 319). But the ALJ does not include Dr. Biscardi's reliance on those findings when criticizing Dr. Biscardi for relying on only the teacher's assessment.

In addition, the ALJ did not himself raise negative findings that are favorable to Plaintiff. Plaintiff notes that, prior to Dr. Biscardi's June 2010 opinion, Dr. Malone reported poor eye contact (AR 256) (11/15/2009), irritable affect (AR 256) (11/15/2009), easy agitation (AR 259) (11/20/2009), poor impulse control (AR 253, 259) (11/6/2009, 11/20/2009), poor insight (AR 253) (11/6/2009), frustrated mood (AR 303) (4/15/2010), and behavioral problems in school and at home, including incidents of punching holes in the door (AR 265) (12/17/2009). The ALJ does not discuss

these findings either in his initial recitation of the medical evidence at the outset of his decision or in weighing Dr. Biscardi's opinion. These findings continued after Dr. Biscardi gave his opinion, with reports of irritable affect (AR 256) (2/18/2011, 10/8/2010), poor impulse control (AR 303) (4/15/2010), frustrated mood (AR 303) (4/15/2010), out of control anger during mental status exams (AR 322) (11/29/2010), and behavior problems in school and at home, including incidents of punching holes in doors and walls. (AR 265, 321, 676, 669, 694) (12/17/2009, 1/8/2011, 6/27/2012, 1/17/2013, 7/23/2011). Again, the ALJ failed to acknowledge or discuss these findings. Even though these findings came after, they tend to support Dr. Biscardi's opinion.

Perhaps the ALJ considered this evidence and found that it did not outweigh the other conclusions of the treating doctors, such as a GAF score of 60 in 2010. But because the ALJ did not explain his treatment of the evidence, the Court cannot assess whether the ALJ properly weighed Dr. Biscardi's opinion. *See Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014); *Blakes ex. rel. Wolfe v. Barnhart*, 331 F.3d 565, 568 (7th Cir. 2003) ("Both the evidence favoring the claimant as well as the evidence favoring the claim's rejection must be examined . . . ."). Nor is it the Court's place to weigh this evidence or guess at the ALJ's reasoning.

Plaintiff also argues that Dr. Biscardi did not err by relying on the teacher questionnaire. Plaintiff is correct that the teacher questionnaire is a proper "other source." *See* 20 C.F.R. § 416.913(d)(2); Social Security Administration Public Policy Site: POMS Section DI 25205.030, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425205030 POMS (last visited Mar. 17, 2016). But Plaintiff misunderstands the ALJ. The ALJ is not stating that a teacher is not a proper source. Rather the ALJ reasoned that Dr. Biscardi improperly gave more weight to the teacher's assessment than the treating physicians. Nevertheless, as discussed above, it is unclear whether the

ALJ properly did so given that the ALJ did not discuss Dr. Biscardi's notation of Dr. Malone's negative findings and did not himself address the negative findings. Moreover, as discussed in the next section, the ALJ made inconsistent findings regarding the weight afforded the teacher's assessment— on the one hand, the ALJ gave no weight to Dr. Biscardi's opinion in large part because of Dr. Biscardi's reliance on the teacher's assessment, while on the other hand, the ALJ relied himself almost exclusively on the teacher's assessment to find that Plaintiff had "less than marked" limitation in the domain of "caring for yourself." (AR 383).

Plaintiff next argues that the ALJ erred in rejecting Dr. Biscardi's opinion on the basis that the records showing improvement in Plaintiff's symptoms were not available to him at the time he rendered his opinion. The ALJ specifically pointed to the April 2010 records indicating that Plaintiff was doing well at school and that his behaviors had significantly improved with medication management and adjustments. (AR 385). The ALJ again selectively discussed the evidence. *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence."). Although Dr. Malone noted in April 2010 that Plaintiff was "doing really well in school," she also noted at that same visit that Plaintiff and his mother "are in intense conflict" and his mother "came in saying she was fearing for her life, because he kept saying that he was going to kill someone when he was upset with them." (AR 302). Dr. Malone further noted during the mental status examination that Plaintiff's affect was "weary and angry" and that his insight was "fair to poor." (AR 303). The ALJ does not discuss these aspects of the record.

Finally, Plaintiff argues that the ALJ should have called a medical expert to advise him of Plaintiff's limitations after rejecting the opinion of Dr. Biscardi, especially since more than three

years elapsed between Dr. Biscardi's opinion and the ALJ's 2013 hearing. The Commissioner did not respond to this argument. Plaintiff suggests that, by rejecting Dr. Biscardi's opinion, ALJ Kramzyk was faced with the same set of opinions that led ALJ Marceille to request the opinion of Dr. Biscardi. The Court disagrees. ALJ Kramzyk also had the benefit of Dr. Biscardi's opinion, even if he ultimately gave it little weight.

The cases cited by Plaintiff to contend that the ALJ should have solicited an additional medical opinion are not persuasive. In contrast with the ALJ in *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000), ALJ Kramzyk did not draw medical conclusions but rather assessed functional equivalence based on the evidence of record. In *Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011), the court opined that, if the ALJ found the evidence of record, which was comprised of the claimant's testimony and medical evidence, to be insufficient, the ALJ had a responsibility to recognize the need for additional medical evaluations; in this case, the ALJ did not give any indication that the evidence of record was insufficient. *Clayborne v. Astrue* is distinguishable; the court held that the ALJ should have further developed the record with a second consultative examiantion because the original consultative examination did not provide the medical evidence necessary to resolve the question of whether the claimant's diabetes mellitus constituted a disability. No. 06 C 6380, 2007 WL 6123191, at *4 (N.D. Ill. Nov. 9, 2007). In this case, there is no absence of evidence nor is there an opinion or treatment note that did not address an impairment of record. Finally, in contrast with *Goins v. Colvin*, 764 F.3d 677, 681 (7th Cir. 2014), there are no new medical tests, such as an MRI, that require a new medical opinion. Perhaps a second medical opinion would have been helpful, and the ALJ may wish to obtain one on remand; however, that the ALJ did not obtain a second medical opinion was not reversible error.

2.      Domain of "Caring for Yourself"

A "marked" limitation in a domain is found when the child's impairment seriously interferes with his activities. 20 C.F.R. § 416.926a(e)(3). The domain of "caring for yourself" considers how well a child maintains a healthy emotional and physical state and how he copes with stress and changes in his environment. 20 C.F.R. § 416.926a(k). An adolescent should "begin to discover appropriate ways to express [his] feelings, both good and bad." 20 C.F.R. § 416.926a(k)(2)(v). Some examples of limited functioning in this domain include self-injurious behavior, ignoring safety rules, and disturbances in eating and sleeping patterns. 20 C.F.R. § 416.926a(k)(3). Plaintiff argues that the ALJ inadequately analyzed the domain of "caring for yourself," in which the ALJ found that Plaintiff had a "less than marked" limitation. (AR 383). The Court agrees.

In his reasoning, the ALJ noted that, at the hearing, Plaintiff's counsel argued that Plaintiff had a "marked" limitation. The ALJ then explained that, although Plaintiff had stopped taking his medications, Plaintiff reported that he does not feel that he needs them. The ALJ noted that Plaintiff had gotten into verbal altercations, but not physical altercations, although the ALJ also noted that, according to counsel, Plaintiff purportedly vandalizes, punches holes in walls and windows, and pulled a knife on his family. The ALJ commented that there was no indication of any criminal charges. The ALJ then turned to the teacher's assessment, noting that, although she noted "3 - an obvious" problem in one subcategory, "2 - a slight problem" to "3 - an obvious problem" in three subcategories, and "1 - no problem" to "2 - a slight problem" in the remaining six subcategories, the teacher did not find that Plaintiff had either "4- a serious problem" or "5 - a very serious problem" in any area, which would have correlated to a "marked" or "extreme" functional limitation in the domain. (AR 384).

First, the ALJ again selectively discussed the evidence, overlooking evidence that could establish a "marked" or "extreme" limitation in this domain. The ALJ may not ignore contrary evidence. *See, e.g.*, *Moore*, 743 F.3d at 1123; *Scrogham*, 765 F.3d at 698 ("sound-bite" approach).

For example, the ALJ found that while Plaintiff had gotten into verbal altercations, he had not engaged in physical altercations. Plaintiff points out that Dr. Malone noted that Plaintiff "hit kids in school," (AR 251), and put his friend in a choke hold, (AR 265). The first example was noted on November 6, 2009, which was Plaintiff's intake interview and when Plaintiff had not yet begun treatment. Yet, the second example was from December 17, 2009, after which Plaintiff had been receiving treatment, and is from a record that the ALJ relies on heavily to find Plaintiff less limited than he asserts and to discredit Dr. Biscardi's opinion.

On March 18, 2010, Plaintiff reported to Dr. Malone that he was "being violent with his brother." (AR 299). At the same visit, his mother stated that Plaintiff had been pushing and punching her, which Plaintiff denied. *Id*. At the same visit, Plaintiff also noted that he got attacked by five kids at school after he told them he did not want to fight. *Id*. At the April 15, 2010 visit, the same fight was reported. (AR 302). In August 2010, it was reported that Plaintiff broke into his brother's room, breaking the door. (AR 334). Even as late as April 2013, treatment records show that Plaintiff was "having more issues with anger," would get "uncontrolled," and was putting holes in the walls of their home. (AR 657). In July 2013, just before he turned 18, Plaintiff's therapist assessed Plaintiff's violence risk as moderate. (AR 651).

In October 2010, it was reported to Dr. Malone that Plaintiff was suspended twice for a fight. (AR 336). Records from Portage High School detail 80 incidents of poor behavior between September 2008 and December 2012. (AR 627-29). On November 10, 2010, an entry provides that

24

Plaintiff got into a physical altercation with another student and that Plaintiff had been hitting and kicking students on a daily basis as they walked into the room. (AR 6289).

The ALJ correctly noted that criminal charges were not brought against Plaintiff, but the ALJ failed to discuss Plaintiff's mother's testimony that she called the police several times, the police came to the house and talked to Plaintiff, but Plaintiff's behavior continued. (AR 53).

The Commissioner does not address this factual issue. All of this evidence of record not discussed by the ALJ supports Plaintiff's contention that he cannot express his feelings appropriately and has difficulties coping with stress.

Second, the ALJ relied largely on the subcategory ratings in the assessment by Plaintiff's teacher to find that Plaintiff had a "less than marked" limitation in this domain. The ALJ's reliance on the teacher's assessment to make a finding adverse to Plaintiff is in direct contrast to his criticism of Dr. Biscardi's reliance on the teacher's assessment to make findings favorable to Plaintiff. In the context of rejecting the opinion of Dr. Biscardi, the ALJ discounted the teacher's assessment on the basis that she only knew Plaintiff for five months and taught him one subject. Yet, other than Plaintiff's and his mother's testimony, the ALJ now relies exclusively on the teacher's subcategory ratings and the lack of a rating equivalent to "marked" or "extreme" to rate Plaintiff as having "less than marked" limitation in the domain of "caring for yourself." These findings are inconsistent. The Commissioner offers no response to this argument. Given the record, the Court cannot find that the inconsistency is harmless. The ALJ improperly rejected the teacher's assessment for one purpose and relied on it for another, inconsistent purpose. *Compare Mazzuca v. Colvin*, No. 12 C 2907, 2013 WL 1343344, at *9 (N.D. Ill. Apr. 2, 2013) ("An ALJ cannot logically reject a treating physician's report and then rely on it to support the RFC finding.").

In support of the ALJ's finding of "less than marked" limitation in this domain, the Commissioner contends generally that the ALJ based his findings on the record as a whole, including the opinions of the treating, examining, and reviewing medical sources, school evaluations, and the testimony of Plaintiff and his mother. (Def. Resp. 6-7). This is incorrect. The ALJ's findings are based only on Plaintiff's statements, those of his mother (indirectly), and the teacher's assessment; there is no reference to any medical source in the analysis of this domain. *See* (AR 383). The Commissioner also responds that the ALJ properly relied on the opinion of Dr. Gaddy and Dr. Horton, who concluded that Plaintiff had a "less than marked" limitation in this domain. However, as discussed in the previous section, the ALJ did not properly weigh the opinion evidence, an argument to which the Commissioner did not provide a response.

Remand is required because substantial evidence does not support the ALJ's assessment of Plaintiff's functioning in the domain of "caring for yourself."

### B. Adult Disability Benefits

*1.    Adult Disability Standard*

To be eligible for disability benefits, a claimant age 18 years and over must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also

prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

*2.* *RFC Analysis*

The RFC is a measure of what an individual can do despite the limitations imposed by his impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 416.927(e)(1); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id.*

Finding that Plaintiff has no exertional or postural limitations, the ALJ found that Plaintiff has the mental residual functional capacity to "understand, remember, and carry out short, simple, and repetitive instructions and sustain attention and concentration for 2 hour periods of time for 8 hours in a workday" and "use judgment in making work decisions as it relates to [the] instructions"

and that Plaintiff "requires an occupation with only occasional co-worker contact and supervision; set routine and procedures and few changes during the workday; no contact with the public; no fast paced production work; and can maintain regular attendance and be punctual within customary tolerances and perform activities within a schedule." (AR 386).

Plaintiff argues that, because the ALJ found that Plaintiff has moderate limitations in concentration, persistence, or pace, *see* (AR 386), the ALJ erred by limiting him to work involving short, simple, and repetitive instructions. As the Seventh Circuit Court of Appeals has repeatedly noted, a limitation to work involving short, simple, and repetitive instructions does not adequately account for moderate limitations in concentration, persistence, or pace because the "ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620 (citing *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2002); SSR 85-15, 1985 WL 56857 (1985)); *see also Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014) ("We have repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, or pace."); *Ingle v. Colvin*, 14-CV-413, 2016 WL 270006, at * 7-8 (S.D. Ind. Jan. 22, 2016) ("[A] limitation to simple, routine and repetitive tasks does not adequately account for a moderate limitation in maintaining concentration, persistence, or pace.").

Although the ALJ precluded Plaintiff from performing "fast paced production work," the Seventh Circuit Court of Appeals has found that this limitation also does not adequately capture difficulties in maintaining concentration, persistence, or pace. *See Varga v. Colvin*, 794 F.3d 809, 815 (7th Cir. 2015) (criticizing the ALJ for not defining "fast paced production"); *see also Ingle*,

2016 WL 270006, at *8 (citing *Varga*, 794 F.3d at 815); *Bainter v. Colvin*, 13 C 9105, 2015 WL 5177754, at *11 (N.D. Ill. Sept. 2, 2015) (citing *Varga*, 794 F.3d at 815; *Browning v. Colvin*, 766 F.3d 702, 705-06 (7th Cir. 2014)). Because the ALJ did not properly account for Plaintiff's moderate limitations in concentration, persistence, or pace, remand for further proceedings is required.

Plaintiff also argues that the ALJ failed to explain how he assessed Plaintiff's mental RFC because the ALJ discussed no evidence that he relied on to formulate the RFC. Plaintiff argues that, because no medical expert testified at the hearing and the medical opinions were given in 2010, the ALJ was left with an evidentiary deficit that he could not fill with his lay opinion.

The ALJ provided two grounds for the mental RFC. First, the ALJ noted that, despite an initial intake assessment at Regional Mental Health Center in July 11, 2013, just before Plaintiff turned 18, it did not appear that Plaintiff had participated in recommended therapy.(AR 387). However, the ALJ also recognized Plaintiff testified that he had not seen a psychiatrist in several months because he had moved and because he no longer needed medication since he graduated from high school. And, Plaintiff's mother testified that Plaintiff was not receiving mental health treatment because they had moved from one town to another and Plaintiff was on a waiting list at Regional Mental Health Center. (AR 420). It is unclear how Plaintiff's inability to be seen for psychiatric treatment impacts the RFC. Second, the ALJ also stated generally that he considered the opinion evidence of record as required by the regulations and applicable Social Security Rulings, noting that there is no opinion evidence after age 18.

Plaintiff is correct that the ALJ does not connect the evidence of record to his RFC findings. For example, the ALJ did not explain how he determined that Plaintiff could interact appropriately with co-workers and supervisors on an occasional basis. Plaintiff testified that he did not get along

with adult figures because he did not like to be told what to do, (AR 45), and that he was prone to "fits and rages," knocking holes in door and walls, (AR 48). While that testimony came from the first hearing in April 2011, more than two years before he turned 18, one of the treatment records with similar comments is from about six months before he turned 18. *See* (AR 669).

The ALJ also did not reconcile his RFC finding with Plaintiff's testimony from September 2013, after he turned 18 years old, that he had worked for Oil Experts in the last three months but that he was fired for not getting along with coworkers, tardiness, and an inability to listen to details and understand instructions. (AR 416). The ALJ found that Plaintiff had "marked" limitation in the domain of "interacting and relating with others" prior to the age of 18 and moderate functional restrictions in social functioning as an adult. (AR 386). This is particularly significant given that an individual employed in unskilled work must be able to "respond appropriately to supervision, coworkers, and usual work situations" on a sustained basis. SSR 85-15. In addition, the vocational expert testified at the hearing that an individual could not engage in competitive employment if he had regular fights with coworkers. (AR 734). *Young v. Barnhart*, 362 F.3d 995, 1002-03 (7th Cir. 2004) (reversing when the ALJ's RFC finding failed to account for evidence regarding the claimant's problems accepting instruction, responding appropriately to criticism from supervisors, thinking independently, and setting realistic goals).

The ALJ did not build the requisite logical bridge but will have an opportunity to do so on remand. *See Scott*, 647 F.3d at 740 (holding that an ALJ must ground his assessment of an individual's RFC in evidence, either subjective or objective); *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) (finding the RFC not supported by substantial evidence when the record did not support the parameters included in the RFC once the ALJ had rejected the medical opinion of record

but did not discuss the weight given to the remaining evidence of record); *Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (finding that the ALJ impermissibly played doctor when he decided, absent any medical evidence, that the claimant's condition was less serious because it was treated only with oral medication and not with insulin therapy when no doctor explained why insulin was not prescribed and that the "inference that it was not prescribed because [the claimant] was not experiencing significant problems appears to be the ALJ's own inference, and is wholly unsupported by the record."); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) ("Contrary to SSR 96-8p, however, the ALJ did not explain how he arrived at these conclusions; this omission is sufficient to warrant reversal of the ALJ's decision."); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("Common sense can mislead; lay intuitions about medical phenomena are often wrong.").

### C. Credibility Determination

Finally, Plaintiff contends that the ALJ erred in the credibility determination both in the context of child disability benefits as well as adult disability benefits. The Commissioner does not respond to these arguments.

In making a disability determination, the ALJ must consider a claimant's statements about his symptoms, such as pain, and how the symptoms affect his daily life and ability to work. *See* 20 C.F.R. § 416.929(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1)     The individual's daily activities;
(2)     Location, duration, frequency, and intensity of pain or other symptoms;
(3)     Precipitating and aggravating factors;
(4)     Type, dosage, effectiveness, and side effects of any medication;

(5)      Treatment, other than medication, for relief of pain or other symptoms;

(6)      Other measures taken to relieve pain or other symptoms;

(7)      Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 416.929(c)(3). "Because the ALJ is 'in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504-05 (7th Cir. 2004)); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry*, 580 F.3d at 477); SSR 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

First, the ALJ made a credibility assessment in the context of analyzing the claim for child benefits using the oft-criticized boilerplate language, which references the residual functional capacity assessment. (AR 379). Notwithstanding the Seventh Circuit Court of Appeals' repeated criticism of this "boilerplate language," *see, e.g.*, *Goins v. Colvin*, 764 F.3d 677, 681 (7th Cir. 2014); *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012), the RFC has no place in the credibility determination for child disability benefits because there is no RFC assessment. Thus, it appears that the ALJ did not properly assess Plaintiff's credibility as a child. *See* SSR 96-7p, at *2 n. 2 ("For an individual under age 18 claiming benefits under title XVI who is unable to adequately describe his or her symptom(s), the adjudicator will accept as a statement of this symptom(s) the description

given by the person most familiar with the individual, such as a parent, other relative or guardian. 20 CFR 416.928(a)."). Remand is required for a proper determination of Plaintiff's credibility before the age of 18.

As for the period after Plaintiff turned 18 years old, the ALJ stated that, in making the RFC determination, "the undersigned has considered the claimant's statements concerning the intensity, persistence and limiting effects of his symptoms and found them not entirely credible for the reasons set forth above." (AR 386). One of the findings was that Plaintiff's "[a]llegations of an inability to focus are not credible when the claimant is making no effort to participate in therapies which were previously proven to abate his symptoms successfully." (AR 386). Again, the ALJ discredited Plaintiff because he was no longer seeing a psychiatrist or a therapist after July 2013, at the same time noting Plaintiff's testimony that Plaintiff was unable to see a therapist because his family had moved. The ALJ did not mention Plaintiff's mother's testimony in September 2013 that, because they had moved to a new city, Plaintiff had to change mental health providers and that Plaintiff was on a waiting list at Regional Mental Health Center for treatment. (AR 420). On remand, the ALJ will have an opportunity to reconsider his treatment of this issue as well as obtain new records to determine if Plaintiff did in fact continue treatment with Regional Mental Health Center.

### D. Request for an Award of Benefits

An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Based on the discussion above, remand, not an immediate award of benefits, is required.

**CONCLUSION**

Based on the foregoing, the Court hereby **GRANTS** the relief sought in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 20], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

So ORDERED this 17th day of March, 2016.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT